791 S.E.2d 313

Daniel B. DORN, in his capacity as the Parent and Natural guardian of E.D., R.D., and Y.D., Appellant,

v.

Paul S. COHEN and Susan Cohen, Individually and in their capacity as the Co–Conservators of the person of Abbie Ilene Dorn, a protected person and ward, and in their capacity as Co–Trustees of the Abbie Dorn Special Needs Trust, Respondents.

Paul S. Cohen, M.D. and Susan Cohen, Respondents,

v.

E.D., R.D., and Y.D., The Living Issue of Abbie Ilene Dorn, and the South Carolina Department of Health and Human Services, Respondents below,

Of whom E.D., R.D., and Y.D., The Living Issue of Abbie Ilene Dorn are the Appellants,

and

The South Carolina Department of Health and Human Services is a Respondent.

In Re The Abbie Dorn Special Needs Trust

Appellate Case No. 2015–000659
Opinion No. 5432

Court of Appeals of South Carolina.

Heard May 11, 2016
Filed August 3, 2016
Rehearing Denied October 27, 2016

John A. Massalon and Christy Ford Allen, both of Wills Massalon & Allen LLC, of Charleston, for Appellants Daniel B. Dorn, E.D., R.D., and Y.D.

Daniel Scott Slotchiver, of Slotchiver & Slotchiver, LLP, of Charleston, for Appellant Daniel B. Dorn.

John Kachmarsky, of Law Office of John Kachmarsky, of Charleston, as Court Appointed Attorney and Guardian ad Litem for Appellants E.D., R.D., and Y.D.

Reese Rodman Boyd, III and Bret Harlan Davis, of Davis & Boyd, LLC, of Myrtle Beach, for Respondents Paul S. Cohen and Susan Cohen.

Lynette Rogers Hedgepath, of the Hedgepath Law Firm, PA, of Conway, as Court Appointed Attorney for Abbie Ilene Dorn.

Virginia Lee Moore, of Moore Johnson & Saraniti Law Firm, PA, of Surfside Beach, as Court Appointed Guardian ad Litem for Abbie Ilene Dorn.

Shealy Boland Reibold, of the South Carolina Department of Health and Human Services, of Columbia, for Respondent South Carolina Department of Health and Human Services.

KONDUROS, J.:

Daniel Bernard Dorn and E.D., R.D., and Y.D. (collectively, Appellants) appeal the circuit court's order dismissing as not immediately appealable their appeal of the probate court's order adding a party after the conclusion of Dorn's case-in-chief. Appellants contend the probate court's order, which added Abbie Ilene Dorn (Abbie) as a party to Dorn's petition to remove Abbie's parents, Paul S. Cohen, M.D. and Susan Cohen (collectively, the Cohens), as the coconservators and cotrustees of the Abbie Dorn Special Needs Trust (the Trust), was immediately appealable because it affected Dorn's substantial right to name his own defendant and to control the presentation of evidence at trial. We affirm the circuit court's order.

**FACTS/PROCEDURAL HISTORY**

Dorn and Abbie began trying to conceive a child after marrying in 2002. Despite difficulty, Abbie conceived triplets and delivered E.D., R.D., and Y.D. (collectively, Children) at Cedars–Sinai Medical Center (Cedars–Sinai) in Los Angeles, California on June 21, 2006. During delivery, Abbie suffered catastrophic injuries that left her incapacitated.

Abbie, through Dorn and her guardian ad litem, brought and settled a medical malpractice claim against Cedars–Sinai

for $6,730,000. The settlement funded the Trust through a one-time contribution of $910,275.20. The balance of the settlement funded the purchase of a $4,333,105 annuity, which was to provide periodic payments of $31,000 per month to the Trust over the remainder of Abbie's life. The amount of the annuity payments to the Trust was set to increase annually at a rate of 3.5%.

The Trust named Abbie as its sole primary beneficiary and Children as remainder beneficiaries after Abbie's death.[1] The Trust named the Cohens as cotrustees.[2] The Trust empowered the Cohens to employ professionals, including attorneys, for estate administration purposes and to represent Abbie in legal matters. The Trust made compensation of the attorneys hired on Abbie's behalf contingent on court approval.

The Cohens moved to California to care for Abbie so she could remain close to Children; however, after learning Abbie was unlikely to secure daily visitation with Children, the Cohens returned with Abbie to their home in Horry County. On April 1, 2008, the Horry County Probate Court transferred jurisdiction over the Trust from Kern County, California to Horry County.

Dorn informed the Cohens he wanted a divorce, and they brought a marital dissolution action on Abbie's behalf in California in 2008. The California family court bifurcated the action and entered an order dissolving Dorn and Abbie's marriage on September 11, 2008. The California family court decided the custody, visitation, and child support portions of Dorn and Abbie's divorce nearly three years later in April 2011.

In November 2010, Dorn filed an emergency petition on Children's behalf to remove the Cohens as the Trust's cotrustees and sought a temporary restraining order (TRO) to

---

1. Children's interest as remainder beneficiaries of the Trust was subject to the Trust's repayment of the South Carolina Department of Health and Human Services (DHHS) for expenditures made by South Carolina on Abbie's behalf.

2. The Trust was established to provide a discretionary, spendthrift trust to supplement public resources and benefits, at the Cohens' discretion, when public resources and benefits were unavailable or insufficient to provide for Abbie's health, safety, and welfare.

prevent the Cohens from spending Trust money on anything other than Abbie's medical needs. Dorn alleged the Cohens abused their fiduciary responsibilities, violated the Trust's terms, and spent a substantial portion of the Trust's corpus on litigating the visitation portion of Dorn and Abbie's divorce. Dorn also sought repayment of all Trust funds associated with litigating the California visitation action.

Two days later, the Cohens filed a petition to affirm $495,326.75 in legal fees paid by the Trust and to reform the Trust's terms. The Cohens alleged the Trust's terms created a logistical impracticability by requiring them to obtain court approval before paying attorney's fees. The Cohens maintained the Trust empowered them to incur and pay legal fees on Abbie's behalf; further, the Cohens sought permission to pay future legal fees with Trust funds.

The probate court held a TRO hearing on December 15, 2010, and denied Dorn's request for a TRO. The probate court believed there was some question as to whether the Cohens were authorized to pay legal fees with Trust funds and thought Dorn's and the Cohens' petitions should be heard together in a single trial. Dorn stated he had no objection to the cases being heard together, and he believed the questions of fact were common to both petitions.

The probate court found Dorn should be served with the Cohens' petition and it should be amended to name both Children and DHHS as parties. The probate court recognized a potential conflict of interest existed if Dorn were to represent Children with respect to the Cohens' petition because of the ongoing visitation dispute between Dorn and the Cohens. To resolve any conflict of interest, the probate court announced it would appoint a guardian ad litem to independently represent Children. The probate court appointed John Kachmarsky (Children's GAL) as attorney and guardian ad litem for Children on February 21, 2011. Contemporaneously, the probate court appointed Virginia Lee Moore as guardian ad litem (Abbie's GAL) and Lynette Rodgers Hedgepath (Appointed Attorney) as the appointed attorney for Abbie.

The Cohens amended their petition and named DHHS and Children as parties. Abbie and Children filed separate answers to the amended petition. Children asserted a counterclaim for

breach of fiduciary duty against the Cohens, alleging the Cohens failed to exercise prudence or discretion in their pursuit of visitation with Children and dissipated the Trust's corpus without court approval. The Cohens answered Children's counterclaim and denied breaching their duties as cotrustees; further, the Cohens maintained Children failed to state a claim on which relief could be granted.

Trial commenced before the probate court on February 25, 2013. Dorn sought clarification regarding whether the probate court intended to hear three separate claims in a single trial, including Dorn's petition, the Cohens' petition, and Children's counterclaim. The Cohens believed trying multiple cases simultaneously was impractical and suggested Dorn's petition be heard and rebutted first, followed by the Cohens' petition. The Cohens argued any duplicative testimony from the first trial could be incorporated into the second trial as needed. Children preferred the petitions be heard simultaneously. Neither Abbie's GAL nor Appointed Attorney expressed a preference as to how the case should proceed.

The probate court believed the petitions were intertwined and trying the petitions together would be most effective. The probate court indicated if the petitions were heard separately, it was extremely unlikely the probate court would issue a decision at the end of the trial on Dorn's petition. The probate court explained Dorn would present his case first and the Cohens, Children, Appointed Attorney, and Abbie's GAL would be given an opportunity to cross-examine Dorn's witnesses. The probate court provided the parties would need to take that opportunity to question witnesses with respect to their own cases. The probate court stated the parties could recall witnesses later and call rebuttal witnesses to Dorn's case when presenting their own cases.

Appointed Attorney requested Dorn provide the parties with the order in which Dorn intended to call his witnesses. Dorn explained he would do whatever the probate court asked of him but noted the Cohens, Appointed Attorney, and Abbie's GAL had not requested Dorn's witness list during discovery. Dorn believed asking him to provide a witness list at that point circumvented the discovery process and sought information he was not required to provide. The probate court re-

quired only that Dorn inform the parties of the witnesses he intended to call before each day of trial. Finally, the probate court clarified Appointed Attorney was appointed to represent Abbie and not to represent Abbie's GAL.

Dorn, the Cohens, Children, and Appointed Attorney all presented opening statements. Dorn objected during Appointed Attorney's opening statement to statements regarding the potential repayment of legal fees to the Trust. The probate court told Dorn it would consider his objections to Appointed Attorney's anticipated evidence when Appointed Attorney presented that evidence during trial. Dorn called six witnesses in support of his petition. Appointed Attorney and Abbie's GAL cross-examined five and six of Dorn's witnesses, respectively. On the last day of trial, Dorn sought to clarify Abbie's status regarding the two petitions before the probate court. Dorn acknowledged the probate court appointed Abbie's GAL and Appointed Attorney but maintained Abbie was not a named party to his petition. The probate court interjected:

> She may not be named as a party, but let's be clear, in my opinion, she is a party in your action to remove the trustees of her trust. I didn't go back to look at the order, and I'm happy to, but my position is I appointed [Appointed Attorney] and [Abbie's GAL] to represent Abbie in the action you brought and in the action the Cohens brought.

Dorn argued Abbie was not a party because she was not listed on the pleadings. Dorn acknowledged Appointed Attorney and Abbie's GAL could cross-examine witnesses but argued they could not call their own witnesses during trial on Dorn's petition. The probate court responded Abbie was an indispensable party and if Dorn took the position Abbie was not a party earlier in the proceedings, it would have directed him to amend his pleadings. Dorn maintained he was unaware of any point in the proceedings when the probate court announced Abbie was a party to the petitions. Dorn contended Abbie was not a true party. Dorn argued Abbie did not answer the pleadings, serve or accept service of discovery, or file a petition seeking to be named a party to the petitions. Dorn argued he was never advised he needed to serve Abbie and Abbie never requested service. Children agreed with Dorn and argued Abbie was not a named party, whereas Children and DHHS were.

The Cohens argued Dorn's objections to Abbie's party status were untimely. They averred the probate court specifically stated all parties would be given an opportunity to cross-examine witnesses but whether Appointed Attorney and Abbie's GAL would not be allowed to call their own witnesses was not discussed. Abbie's GAL argued guardians ad litem in family court routinely called their own witnesses. Abbie's GAL also contended Abbie was a necessary party and Abbie's GAL and Appointed Attorney should be able to present any witnesses deemed necessary to protect Abbie's interests. Dorn argued his objection to Abbie's party status was not waived because he was not required to raise it until Abbie acted as a party, which had not occurred until that point in the case.

Appointed Attorney argued she and Abbie's GAL actively participated in the proceedings after they were appointed to represent Abbie on both petitions. Appointed Attorney argued she and Abbie's GAL attended depositions, participated in motions hearings and trials, and presented the probate court with fee affidavits. Appointed Attorney acknowledged she did not answer Dorn's petition but stated she would have answered if Abbie had been served. Appointed Attorney argued Dorn was on notice of Abbie's party status at the time the probate court appointed Appointed Attorney and Abbie's GAL. Appointed Attorney contended it was incumbent on Dorn to formally serve Abbie at that time.

Dorn argued Appointed Attorney and Abbie's GAL's involvement in the case rendered Abbie a participant, not a party. Dorn believed Abbie, as a participant, could cross-examine witnesses and submit fee petitions; however, Dorn argued a distinction arose because Abbie could not be served with discovery or call witnesses.

The probate court denied Dorn's motion to exclude Appointed Attorney and Abbie's GAL from calling witnesses based on Dorn's argument that Abbie was not a party. The probate court reiterated Dorn's underlying petition sought to remove the trustees of Abbie's trust, which made her an interested party. The probate court stated it must consider Abbie's best interests and was unaware of any rule preventing a court appointed guardian ad litem from calling his or her own witnesses in an action involving a protected person.

The parties did not complete the trial within the time allotted by the probate court. At the conclusion of the time scheduled for trial, the probate court requested Appointed Attorney and Abbie's GAL provide it with a list of potential witnesses. The probate court also requested the parties submit briefs on any outstanding motions, including adding Abbie as a party.

The parties submitted briefs at the end of March. In her brief, Abbie requested an amendment to the pleadings to allow her to present evidence and testimony regarding the Cohens' reliance on experts in performing their fiduciary duties. Abbie argued Dorn had ample opportunity to conduct discovery and would suffer no prejudice by amending the pleadings. The Cohens argued they should be allowed to amend the pleadings to conform to the evidence they presented at trial to assert the defense of advice of counsel. The Cohens argued Dorn had the opportunity to refute any evidence presented showing the Cohens relied on counsel's advice. Dorn argued it would be unduly prejudicial to allow the Cohens and Abbie to amend the pleadings to conform to the evidence and allow the Cohens to assert an affirmative defense two weeks into trial because Dorn would be required to submit additional discovery, conduct further depositions, and potentially recall every witness who previously testified.

The probate court held a telephone status conference with the parties on November 25, 2013. Thereafter, on December 3, 2013, the probate court issued an order continuing the incomplete trial and another order adding Abbie as a party to both petitions pursuant to Rule 19, SCRCP.

Appellants appealed to the circuit court the probate court's order adding Abbie as a party. On March 10, 2014, the probate court issued an order granting Abbie and the Cohens' motions to amend the pleadings to conform to the evidence and found Dorn would not suffer any prejudice and would be afforded a full opportunity to address the issues raised in the amended pleadings.

On June 26, 2014, the Cohens moved before the probate court for a mistrial on the basis the probate court judge who heard the first part of the trial on Dorn's and the Cohens' petitions was not reelected and would not likely be able to

resume the proceedings before leaving office. The probate court judge recused herself from the matter on September 3, 2014. On October 14, 2014, the Cohens moved to stay the appeals filed by Appellants until a new judge was appointed and the proceedings were tried to conclusion or until a mistrial was declared.

The circuit court held a hearing on the Cohens' motion to stay on February 9, 2015. At the hearing, the circuit court stated it was unlikely a mistrial would be granted. The circuit court found Appellants' appeals were not immediately appealable because no final decision had been rendered in the case. The circuit court dismissed the appeals as not immediately appealable and did not rule on the Cohens' motion to stay the appeal at that time.[3] This appeal followed.

## LAW/ANALYSIS

Appellants argue the probate court's order adding Abbie as a party to Dorn's petition to remove the Cohens as cotrustees of the Trust is immediately appealable because it affects Dorn's substantial right to name his own defendants and control the presentation of evidence at trial. Appellants contend the probate court's order affected Dorn's substantial right because he could have received complete relief without Abbie's addition as a party. Appellants also argue allowing Appointed Attorney and Abbie's GAL to call undisclosed witnesses for whom Dorn had not prepared prevented Dorn from being able to identify, depose, or receive discovery from those witnesses, which left Dorn unable to effectively litigate

---

**3.** The Form 4 orders contained in the record appear to state that the circuit court had already ruled Appellants' appeals were not immediately appealable and because of that the circuit court found the Cohens' motion for a stay moot. Specifically, the orders stated,

This case came before the Court during the February 9, 2015 common pleas non-jury term for a hearing on Defendant Paul S. Cohen's Motion to Stay, filed October 15, 2014. Because this Court denied Plaintiff Daniel B. Dorn's [p]robate [a]ppeal, filed December 23, 2013 as interlocutory, Defendant Paul S. Cohen's Motion to Stay, filed October 15, 2014 is resolved as moot.

The Form 4 orders were sufficient for this court to consider whether the probate court's order was immediately appealable. *See Johnson v. S.C. Dep't of Prob., Parole, & Pardon Servs.*, 372 S.C. 279, 284, 641 S.E.2d 895, 897 (2007) ("As both court rule and this Court's precedent provide, a judgment is effective only when reduced to writing and entered into the record.").

the case, needlessly delayed proceedings, and burdened the Trust with extra costs. We disagree.

■ "The determination of whether a trial court's order is immediately appealable is governed by statute." *Morrow v. Fundamental Long–Term Care Holdings, LLC*, 412 S.C. 534, 537, 773 S.E.2d 144, 145 (2015). Section 14–3–330 of the South Carolina Code (1977 & Supp. 2015) states,

> The Supreme Court shall have appellate jurisdiction for correction of errors of law in law cases, and shall review upon appeal:
>
> (1) Any intermediate judgment, order or decree in a law case involving the merits in actions commenced in the court of common pleas and general sessions, brought there by original process or removed there from any inferior court or jurisdiction, and final judgments in such actions; *provided*, that if no appeal be taken until final judgment is entered the court may upon appeal from such final judgment review any intermediate order or decree necessarily affecting the judgment not before appealed from;
>
> (2) An order affecting a substantial right made in an action when such order (a) in effect determines the action and prevents a judgment from which an appeal might be taken or discontinues the action, (b) grants or refuses a new trial or (c) strikes out an answer or any part thereof or any pleading in any action;
>
> (3) A final order affecting a substantial right made in any special proceeding or upon a summary application in any action after judgment; and
>
> (4) An interlocutory order or decree in a court of common pleas granting, continuing, modifying, or refusing an injunction or granting, continuing, modifying, or refusing the appointment of a receiver.

Our supreme court has held an order depriving a plaintiff of his or her ability to determine the defendant against whom he or she brings a cause of action can affect a substantial right, making the order immediately appealable. *See Morrow*, 412 S.C. at 539, 773 S.E.2d at 146 ("The effect of this order is to prevent the [plaintiffs] from being architects of their own complaint, and deprives them of bringing their case against the defendant of their own choosing."); *Neeltec Enters., Inc. v.*

*Long*, 397 S.C. 563, 566, 725 S.E.2d 926, 928 (2012) ("The right of the plaintiff to choose [his] defendant is a substantial right within the meaning of this subsection.").

However, the fact that the probate court's order, on its face, added Abbie as a party to Dorn's petition is not inherently dispositive of whether the probate court's order was immediately appealable. Rather, "the question of whether an order is immediately appealable is determined on a case-by-case basis." *See Morrow*, 412 S.C. at 538, 773 S.E.2d at 146. To determine whether an order is immediately appealable, we look to the probate court's order's effect on the proceedings. *See Thornton v. S.C. Elec. & Gas Corp.*, 391 S.C. 297, 304, 705 S.E.2d 475, 479 (Ct. App. 2011) ("[A]n appellate court should look to the effect of an interlocutory order to determine its appealability under section 14–3–330(2)(c).").

In *Neeltec*, our supreme court held an order requiring a plaintiff to substitute two corporations as defendants in lieu of the individual the plaintiff originally named in the complaint was immediately appealable. 397 S.C. at 564, 725 S.E.2d at 927. In that case, the plaintiff originally filed an action against Willard Long, in his individual capacity, for blocking the plaintiff's advertisements for a fireworks store off Interstate 95 with advertisements for Long's own store, Fireworks Superstore. *Id.* at 565, 725 S.E.2d at 927. In defending the action, Long filed a "Motion for Summary Judgment or, in the Alternative, for Substitution of Parties," alleging Long did not own Fireworks Superstore but that it was owned by Hobo Joes, Inc. and subsequently, by Foxy's Fireworks Superstore, Inc. *Id.* at 565, 725 S.E.2d at 927–28. The special referee granted Long's motion, finding Long was not the proper defendant and ordered the plaintiff to substitute the two corporations as defendants. *Id.* In finding the order immediately appealable, our supreme court stated the order "effectively discontinue[d] [the plaintiff's] suit against Long, thus bringing the order under 2(a)." *Id.* at 566, 725 S.E.2d at 928.

Similarly, in *Morrow*, our supreme court held an order bifurcating proceedings that had the effect of depriving the plaintiffs of their substantial right to bring a case against the defendant of their choosing was immediately appealable. 412 S.C. at 539, 773 S.E.2d at 146. In that case, the plaintiffs filed

a negligence action against a nursing home for injuries sustained by a resident who was assisted in the shower by a nursing home employee. *Id.* at 535–36, 773 S.E.2d at 144–45. In addition, the plaintiffs filed suit against the nursing home's corporate parents, alleging they were vicariously liable for the nursing home's negligence and directly liable for underfunding the nursing home, which led to staffing and training deficiencies. *Id.* at 536, 773 S.E.2d at 145. The nursing home's corporate parents filed a motion to bifurcate the trial, arguing the issues of the nursing home's negligence and corporate negligence were distinct. *Id.* Thereafter, the trial court issued an order stating the action against the nursing home could go forward but only if the plaintiffs were successful would the second action on corporate negligence proceed before a jury at trial. *Id.* In finding the circuit court's order immediately appealable, our supreme court stated the effect of the trial court's order was to grant the nursing home's corporate parents potential summary judgment on the issue of direct corporate liability because the plaintiffs would not be able to litigate that claim against the corporate parents if they were unsuccessful in their direct action against the nursing home. *Id.* at 539, 773 S.E.2d at 146. Our supreme court further determined the effect of the circuit court's order "deprive[d] [the plaintiffs] of bringing their case against the defendant of their own choosing." *Id.*

■ We find the probate court's order in this case did not affect Dorn's substantial right to choose his own defendant. Unlike the orders in *Neeltec* and *Morrow*, the probate court's order in this case neither substituted Abbie for the Cohens nor deprived Dorn of the ability to maintain his petition to remove the Cohens as the Trust's cotrustees. Rather, the probate court's order had the effect of an order granting a motion to intervene because it allowed for Abbie's full participation as a party in the action seeking to remove the trustees of the trust created for her benefit. *See Duncan v. Gov't Emps. Ins. Co.*, 331 S.C. 484, 485, 449 S.E.2d 580, 580 (1994) (holding an appeal from an order of the circuit court granting a guardian ad litem's motion to intervene was interlocutory, did not affect a substantial right, and was therefore not immediately appealable).

Appellants' contention that Dorn could have received complete relief without Abbie's addition as a party in unavailing. Appellants' argument overlooks Abbie's interest as the primary beneficiary of the Trust. *See* S.C. Code Ann. § 62–7–103(2)(A) (Supp. 2015) (stating a beneficiary is "a person [who] ... has a present or future beneficial interest in a trust, vested or contingent"). "[A]ccording to the former decisions of this court, it is indispensable that the beneficiaries be made parties to any proceeding brought for the purpose of adjudicating their interest." *Hood v. Cannon*, 178 S.C. 94, 99–100, 182 S.E. 306, 308 (1935). In this case, determination of the issues before the probate court had serious consequences for Abbie, whose welfare and care depended directly on the prudent use of the Trust's funds. Therefore, the probate court's joinder of Abbie under Rule 19, SCRCP, was proper and enabled Abbie, through Appointed Attorney and Abbie's GAL, to protect her interests as the Trust's primary beneficiary. *See* Rule 19(a), SCRCP ("A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action *shall* be joined as a party in the action if ... he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may ... as a practical matter impair or impede his ability to protect that interest ...." (emphasis added)).

To the extent Appellants argue Abbie's interests were adequately represented by the Cohens, we disagree. This argument fails to recognize the distinction between guardians and guardians ad litem, as well as the position in which Dorn's petition placed the Cohens by forcing them to defend their expenditures from the Trust. "The terms 'guardian' and 'guardian ad litem' have separate and distinct legal meanings; thus, persons appointed to serve in those capacities are charged with separate and distinct duties and obligations." *Wilson v. Ball*, 337 S.C. 493, 496, 523 S.E.2d 804, 806 (Ct. App. 1999).

> A "guardian" is one given the power and charged with the duty of taking care of a person who is considered incapable of administering his or her own affairs and of managing his or her property rights. A "guardian ad litem," on the other hand, is one authorized to prosecute on behalf of or defend

an incapacitated person in any suit to which the incapacitated person may be a party and to protect his or her interests in the particular litigation.

*Id.* at 496–97, 523 S.E.2d at 806 (footnote omitted). Further, "[a] guardian ad litem is a representative of the court[,] appointed to assist it in properly protecting the interests of an incompetent person." *Shainwald v. Shainwald,* 302 S.C. 453, 457, 395 S.E.2d 441, 444 (Ct. App. 1990).

The record makes abundantly clear the Cohens are excellent caregivers and provide Abbie with outstanding care. However, given that Dorn's petition places the Cohens in the unenviable position of defending their expenditures from the Trust, a potential conflict of interest exists between whether Trust funds were used to satisfy Abbie's special needs versus the Cohens' perception of Abbie's needs. Thus, while Appellants are correct the Cohens are Abbie's guardians and can protect her interests under many circumstances, the independent representation the probate court afforded Abbie by appointing Abbie's GAL and Appointed Attorney was needed here.

Further, despite Appellants' arguments to the contrary, Dorn suffered no undue prejudice as a result of the probate court's order adding Abbie as a party to the proceedings. Appellants argue the probate court's order left Dorn unable to effectively litigate his case; however, the record gives no indication Dorn would not be given sufficient time to prepare to cross-examine any witnesses Appointed Attorney and Abbie's GAL may call to testify at trial. The probate court indicated from the outset that because both petitions were based on the same questions of fact, it would be flexible with the parties' presentation of their cases and allow the parties to recall witnesses and call rebuttal witnesses if necessary. Appellants never objected to this procedural arrangement; instead, both Dorn and Children were early proponents of trying the petitions simultaneously.

The record demonstrates Abbie, through Appointed Attorney and Abbie's GAL, fully participated in the proceedings through depositions, presented an opening statement, and participated in cross-examination of the other parties' witnesses before she was officially named a party to the petitions.

The probate court's comments demonstrated it intended to allow Appointed Attorney and Abbie's GAL to fully participate at trial. Further, Appointed Attorney's willingness to answer Dorn's petition if Abbie had been served with Dorn's petition demonstrated a common understanding amongst the parties Abbie was to be afforded the rights of a full party to both petitions from the beginning of trial. Therefore, we find Appellants were not unduly prejudiced by Abbie's addition as a party in this case and the circuit court properly determined the probate court's order was not immediately appealable because Abbie's addition as a party did not affect Dorn's substantial right to choose his own defendant.

## CONCLUSION

We find the circuit court did not err in dismissing as not immediately appealable Appellants' appeals of the probate court's order adding Abbie as a party. Consequently, the circuit court's order is

**AFFIRMED.**

HUFF and GEATHERS, JJ., concur.